UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-252-DLB

BILLY WARD                                                                                            PLAINTIFF

vs.                         **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                    DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Billy D. Ward filed applications for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) payments on May 17, 2001. His applications were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on April 16, 2002, in Prestonsburg, Kentucky. On June 4, 2002, ALJ James Kemper issued an unfavorable decision, finding that Plaintiff was not under a disability. The Appeals Council denied Plaintiff's request for review by letter dated June 17, 2005. The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claims.

1

Plaintiff, who was 34 years old at the time of the hearing, completed high school and alleges an inability to work beginning on May 2, 2001 due to shortness of breath, and neck and back pain. At the hearing before the ALJ, Plaintiff testified that he injured his neck in a car accident in 1995, and injured his back in a work-related accident in January 2001.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on August 11, 2005. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

2

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time.  (Tr. 15).  At Steps 2 and 3, the ALJ found that Plaintiff has severe impairments due to back and neck pain, and chronic obstructive pulmonary disease, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 15-16).  At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a reduced range of medium level work.  (Tr. 18).  Specifically, the ALJ found that Plaintiff can lift/carry 20 pounds occasionally, 10 pounds frequently; occasionally crawl; never climb ladders, ropes, or scaffolds; must avoid reaching with his left arm; and must avoid vibration, fumes, dusts, gases, and poor ventilation.  (Tr. 18).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a welder.  (Tr. 18).  At Step 5, however, the ALJ found that there are a significant number of jobs Plaintiff can perform despite his limitations, including watch guard, office clerk, surveillance monitor, and production inspector.  (Tr. 19).  This conclusion resulted from testimony by a vocational expert ("VE"), in response to a

hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.    Analysis**

In this appeal, Plaintiff has raised several errors.  First, Plaintiff contends that the ALJ erred in finding that his impairments do not meet or equal Listing § 1.05(C).[1]  Second, he contends that the ALJ failed to consider the combination of his impairments, which renders him unable to work on a reasonably regular basis.  Finally, Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinion of his treating chiropractor, Dr. Philip Simpson.  In response, the Commissioner argues that Plaintiff has failed to present specific medical findings to support his claim of presumptive disability.  The Commissioner also argues that even a cursory review of the ALJ's written decision reveals that he considered all Plaintiff's impairments, both singly and in combination.  Finally,

---

[1]As noted by the Commissioner, Listing 1.05(C), which previously covered other vertebrogenic disorders, was revised in 2002 and now covers amputation. *See Brown v. Barnhart*, 370 F. Supp. 2d 286, 290-91 (D. D.C. 2005) (noting that effective February 19, 2002, the Commissioner revised the Listing of Impairments used to evaluate musculoskeletal impairments and replaced Listing 1.05(C) with new Listing 1.04, which covers three separate sets of criteria for common disorders of the spine); *Bauer v. Barnhart*, No. 05-3580, 2006 WL 456017, at *1 (6th Cir. Feb. 24, 2006) (noting change).  Because Plaintiff's claim was still pending in the administrative review process at the time of the change - the ALJ did not render his decision until June 4, 2002 - the new Listing applies to his claim.  *See* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010-01, at 58011 (Nov. 19, 2001) (to be codified at 20 C.F.R. pts. 404, 416) (stating, "[a]s is our usual practice when we make changes to our regulations, we will apply ... final rules to the claims of applicants for benefits that are pending at any stage of our administrative review process, including those claims that are pending administrative review after remand from a Federal court. With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.").
Consistent with this pronouncement, on February 15, 2006, the Court ordered the parties to submit supplemental briefing on the issue of whether Plaintiff satisfies the requirements of revised Listing 1.04.  (Doc. #7).  The parties complied.  (Docs. #8-9).

according to the Commissioner, the ALJ was not required to give Dr. Simpson's opinion controlling weight because, as a chiropractor, he does not qualify as an "acceptable medical source" under the regulations.

Plaintiff first argues that he meets the requirements of Listing 1.04.  That Listing provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.  Therefore, to satisfy the requirements of Listing 1.04, Plaintiff must have: (1) a disorder of the spine, resulting in compromise of a nerve root or the spinal cord; and (2) symptoms that meet Subpart A, B, or C.  As evidence of nerve root compression, Plaintiff points to an MRI performed on May 14, 2001, which revealed disc dessication at the L5-S1 level with broad-based disc bulging causing mild flattening of the anterior dural sac.  (Tr. 93).  According to Plaintiff, "it is evident from this study that the nerves in [his] back are being affected by the vertobrogenic disorder existing at the level of L5-S1."  (Doc. #8, p.1).  The MRI also revealed, however, that "the nerve roots exit normally at all levels."  (Tr. 93).  Absent evidence of "compromise of a nerve root or the

5

spinal cord" or nerve root compression, Plaintiff's back and neck impairments do not satisfy the requirements of Listing 1.04.[2] The Court concludes that the ALJ's finding in this regard is supported by substantial evidence.

Plaintiff also argues that a finding of disability was required based upon the combination of his impairments, as well as his inability to work on a reasonably regular basis as a result. Contrary to Plaintiff's general allegation, the Court's review of the ALJ's written decision reveals that he considered Plaintiff's impairments alone and in combination, including those deemed not severe, as required by the regulations. (Tr. 16). Plaintiff's alleged error is, therefore, without merit.

Finally, Plaintiff argues what is commonly referred to as the "treating physician rule." Specifically, he claims that the ALJ erred in failing to credit the opinion of his treating chiropractor, Dr. Philip Simpson. According to Plaintiff, Dr. Simpson's records "establish that [he] is off work due to disability resulting from [his impairments]." (Doc. #5, p.2). Plaintiff's argument is unavailing for two reasons. First, as noted by the Commissioner, chiropractors are not "acceptable medical sources," *see* 20 C.F.R. §§ 404.1513(a), 416.913(a), whose opinions are entitled to controlling weight. *See Craig v. Comm'r of Social Security*, No. 96-3721, 1997 WL 357818, at *2 (6th Cir. June 25, 1997). Second, the notation in Dr. Simpson's records that Plaintiff was "off work" does not constitute a

---

[2]Plaintiff's claim that he meets the requirements of paragraph (A) does not change this conclusion. In fact, Plaintiff devotes a substantial portion of his brief to these requirements. Specifically, he notes that Dr. Barefoot found sensory deficits in his fingers, left upper and lower extremity weakness, diminished grip strength, diminished range of motion in his cervical and lumbar spine, muscle atrophy in his left biceps and thigh, and reflex abnormalities of his patellar tendon (Tr. 126-30); and Dr. Templin found decreased range of motion and positive straight leg raise (Tr. 131-42). Despite this evidence, Plaintiff has failed to present specific evidence that he suffered from "a disorder of the spine, resulting in compromise of a nerve root or the spinal cord" or evidence of nerve root compression.

"medical opinion" that the ALJ was required to accept or reject. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (clarifying that "medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). For these reasons, the Court finds no error.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #5) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #6) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 23rd day of May, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-252-WardMOO.wpd